Sealed

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. **19    25046** Cv- Williams

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ON POINT GLOBAL LLC, a limited liability company, also d/b/a On Point,

ON POINT EMPLOYMENT LLC, a limited liability company,

ON POINT GUIDES LLC, f/k/a Rogue Media Services LLC, a limited liability company,

DG DMV LLC, a limited liability company,

ON POINT DOMAINS LLC, a limited liability company,

FINAL DRAFT MEDIA LLC, a limited liability company,

WALTHAM TECHNOLOGIES LLC, a limited liability company,

CAMBRIDGE MEDIA SERIES LLC, f/k/a License America Media Series LLC, a limited liability company,

ISSUE BASED MEDIA LLC, a limited liability company,

BELLA VISTA MEDIA LTD., a limited liability company, also d/b/a BV Media,

CARGANET S.A., a corporation, also d/b/a G8 Labs,

DRAGON GLOBAL LLC, a limited liability company,

DRAGON GLOBAL MANAGEMENT LLC, a limited liability company

---

**FILED BY** ___ **D.C.**

**DEC 0 9 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

---

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

**Filed Under Seal**

---

Certified to be a true and correct copy of the document on file Angela E. Noble, Clerk, U.S. District Court Southern District of Florida

By _____ Deputy Clerk

Date 12-23-19

1



DRAGON GLOBAL HOLDINGS LLC, a limited liability company,

DIRECT MARKET LLC, a limited liability company,

BLUEBIRD MEDIA LLC, a limited liability company,

BORAT MEDIA LLC, a limited liability company,

BRING BACK THE MAGIC MEDIA LLC, a limited liability company,

CHAMETZ MEDIA LLC, a limited liability company,

CHELSEA MEDIA LLC, a limited liability company,

COINSTAR MEDIA LLC, a limited liability company,

DOMAIN DEVELOPMENT STUDIOS LLC, a limited liability company,

DOMAIN DIVIDENDS MEDIA LLC, a limited liability company,

EAGLE MEDIA LLC, a limited liability company,

FALCON MEDIA LLC, a limited liability company,

GNR MEDIA LLC, a limited liability company,

ISLAND MEDIA LLC, a limited liability company,

LEATHERBACK MEDIA GROUP LLC, a limited liability company,

MACAU MEDIA LLC, a limited liability company,

CEG MEDIA LLC, f/k/a Matzoh Media LLC, a limited liability company,

MBL MEDIA LTD. INC., a corporation,

ORANGE AND BLUE MEDIA LLC, a limited liability company,

ORANGE GROVE MEDIA LLC, a limited liability company,

PANTHER MEDIA LLC, a limited liability company,

PIRATE MEDIA LLC, a limited liability company,

PIVOT MEDIA GROUP LLC, a limited liability company,

PJ GROOVE MEDIA LLC, a limited liability company,

SANDMAN MEDIA GROUP LLC, a limited liability company,

SHADOW MEDIA LLC, a limited liability company,

SKYLAR MEDIA LLC, a limited liability company,

SLAYER BILLING LLC, a limited liability company,

SPARTACUS MEDIA LLC, a limited liability company,

VERY BUSY MEDIA LLC, a limited liability company,

WASABI MEDIA LLC, a limited liability company,

YAMAZAKI MEDIA LLC, a limited liability company,

BRONCO FAMILY HOLDINGS LP, a/k/a Bronco Holdings Family LP, a limited partnership,

BAL FAMILY LP, a limited partnership,

CARDOZO HOLDINGS LLC, a limited liability company,

714 MEDIA LTD., a corporation,

MAC MEDIA LTD., a corporation,

ON POINT CAPITAL PARTNERS LLC, a limited liability company,

3

LICENSE AMERICA MANAGEMENT LLC, a limited liability company,

LICENSE AMERICA HOLDINGS LLC, a limited liability company,

BLACKBIRD MEDIA LLC, a limited liability company,

BURTON KATZ, individually and as an officer of Bella Vista Media Ltd., also d/b/a BV Media, Bronco Family Holdings LP, a/k/a Bronco Holdings Family LP, Cambridge Media Series LLC, f/k/a License America Media Series LLC, DG DMV LLC, Direct Market LLC, Falcon Media LLC, GNR Media LLC, Issue Based Media LLC, On Point Global LLC, also d/b/a On Point, On Point Guides LLC f/k/a Rogue Media Services LLC, Orange Grove Media LLC, and Waltham Technologies LLC,

BRENT LEVISON, individually and as an officer of BAL Family LP, Bella Vista Media Ltd., also d/b/a BV Media, Bring Back the Magic Media LLC, Cambridge Media Series LLC, f/k/a License America Media Series LLC, Chametz Media LLC, Direct Market LLC, Eagle Media LLC, GNR Media LLC, MBL Media Ltd. Inc., On Point Global LLC, also d/b/a On Point, and On Point Guides LLC, f/k/a Rogue Media Services LLC,

ROBERT ZANGRILLO, individually and as an officer of DG DMV LLC, Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC, On Point Capital Partners LLC, and On Point Global LLC, also d/b/a On Point,

ARLENE MAHON, individually and as an officer of Cambridge Media Series LLC f/k/a License America Media Series LLC, Issue Based Media LLC, On Point Global LLC, also d/b/a On Point, PJ Groove Media LLC, and Waltham Technologies LLC,

ELISHA ROTHMAN, individually and as an officer of Cambridge Media Series LLC, f/k/a License America Media Series LLC, Direct Market LLC, Domain Development Studios LLC, Mac Media Ltd., On Point Global LLC, also d/b/a On Point, On Point Guides LLC

4

f/k/a Rogue Media Services LLC, Orange Grove Media LLC, and Yamazaki Media LLC, and

CHRISTOPHER SHERMAN, individually and as an officer of 714 Media Ltd., Coinstar Media LLC, Direct Market LLC, Domain Development Studios LLC, GNR Media LLC, Pirate Media LLC, and On Point Global LLC, also d/b/a On Point,

Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (c)(1), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5. The FTC is authorized to initiate federal district court proceedings, by its own

5

attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. § 53(b).

## DEFENDANTS

6.       Defendant On Point Global LLC also d/b/a On Point ("**On Point Global**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. On Point Global transacts or has transacted business in this District and throughout the United States.

7.       Defendant On Point Employment LLC ("**On Point Employment**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. On Point Employment transacts or has transacted business in this District and throughout the United States.

8.       Defendant On Point Guides LLC f/k/a Rogue Media Services LLC ("**On Point Guides**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. On Point Guides transacts or has transacted business in this District and throughout the United States.

9.       Defendant DG DMV LLC ("**DG DMV**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. DG DMV transacts or has transacted business in this District and throughout the United States.

10.       Defendant On Point Domains LLC ("**On Point Domains**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. On Point Domains transacts or has transacted business in this District and throughout the United States.

6

11.     Defendant Final Draft Media LLC ("**Final Draft Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Final Draft Media transacts or has transacted business in this District and throughout the United States.

12.     Defendant Waltham Technologies LLC ("**Waltham Technologies**") is a Florida limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Waltham Technologies transacts or has transacted business in this District and throughout the United States.

13.     Defendant Cambridge Media Series LLC f/k/a License America Media Series LLC ("**Cambridge Media Series**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Cambridge Media Series transacts or has transacted business in this District and throughout the United States.

14.     Defendant Issue Based Media LLC ("**Issue Based Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Issue Based Media transacts or has transacted business in this District and throughout the United States.

15.     Defendant Bella Vista Media Ltd. also d/b/a BV Media ("**BV Media**") is a Costa Rican entity with its principal place of business at 350 NE 60th St., Miami, FL 33137. BV Media transacts or has transacted business in this District and throughout the United States.

16.     Defendant Carganet S.A. also d/b/a G8 Labs ("**G8 Labs**") is a Uruguayan entity with its principal place of business at 350 NE 60th St., Miami, FL 33137. G8 Labs transacts or has transacted business in this District and throughout the United States.

17.     Defendant Dragon Global LLC ("**Dragon Global**") is a Delaware limited liability

company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Dragon Global transacts or has transacted business in this District and throughout the United States.

18.    Defendant Dragon Global Management LLC ("**Dragon Global Management**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Dragon Global Management transacts or has transacted business in this District and throughout the United States.

19.    Defendant Dragon Global Holdings LLC ("**Dragon Global Holdings**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Dragon Global Holdings transacts or has transacted business in this District and throughout the United States.

20.    Defendant Direct Market LLC ("**Direct Market**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Direct Market transacts or has transacted business in this District and throughout the United States.

21.    Defendant Bluebird Media LLC ("**Bluebird Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Bluebird Media transacts or has transacted business in this District and throughout the United States.

22.    Defendant Borat Media LLC ("**Borat Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Borat Media transacts or has transacted business in this District and throughout the United States.

23.    Defendant Bring Back the Magic Media LLC ("**BBTMM**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. BBTMM transacts or has transacted business in this District and throughout the United States.

24.    Defendant Chametz Media LLC ("**Chametz Media**") is a Delaware limited

liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Chametz Media transacts or has transacted business in this District and throughout the United States.

25. Defendant Chelsea Media LLC ("**Chelsea Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Chelsea Media transacts or has transacted business in this District and throughout the United States.

26. Defendant Coinstar Media LLC ("**Coinstar Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Coinstar Media transacts or has transacted business in this District and throughout the United States.

27. Defendant Domain Development Studios LLC ("**Domain Development Studios**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Domain Development Studios transacts or has transacted business in this District and throughout the United States.

28. Defendant Domain Dividends Media LLC ("**Domain Dividends Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Domain Dividends Media transacts or has transacted business in this District and throughout the United States.

29. Defendant Eagle Media LLC ("**Eagle Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Eagle Media transacts or has transacted business in this District and throughout the United States.

30. Defendant Falcon Media LLC ("**Falcon Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Falcon Media transacts or has transacted business in this District and throughout the United States.

31.     Defendant GNR Media LLC ("**GNR Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. GNR Media transacts or has transacted business in this District and throughout the United States.

32.     Defendant Island Media LLC ("**Island Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Island Media transacts or has transacted business in this District and throughout the United States.

33.     Defendant Leatherback Media Group LLC ("**Leatherback Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Leatherback Media transacts or has transacted business in this District and throughout the United States.

34.     Defendant Macau Media LLC ("**Macau Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Macau Media transacts or has transacted business in this District and throughout the United States.

35.     Defendant CEG Media LLC f/k/a Matzoh Media LLC ("**CEG Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. CEG Media transacts or has transacted business in this District and throughout the United States.

36.     Defendant MBL Media Ltd. Inc. ("**MBL Media**") is a Delaware corporation with its principal place of business at 350 NE 60th St., Miami, FL 33137. MBL Media transacts or has transacted business in this District and throughout the United States.

37.     Defendant Orange and Blue Media LLC ("**Orange and Blue Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Orange and Blue Media transacts or has transacted business in this District

and throughout the United States.

38.     Defendant Orange Grove Media LLC ("**Orange Grove Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Orange Grove Media transacts or has transacted business in this District and throughout the United States.

39.     Defendant Panther Media LLC ("**Panther Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Panther Media transacts or has transacted business in this District and throughout the United States.

40.     Defendant Pirate Media LLC ("**Pirate Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Pirate Media transacts or has transacted business in this District and throughout the United States.

41.     Defendant Pivot Media Group LLC ("**Pivot Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Pivot Media transacts or has transacted business in this District and throughout the United States.

42.     Defendant PJ Groove Media LLC ("**PJ Groove Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  PJ Groove Media transacts or has transacted business in this District and throughout the United States.

43.     Defendant Sandman Media Group LLC ("**Sandman Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Sandman Media transacts or has transacted business in this District and throughout the United States.

44.     Defendant Shadow Media LLC ("**Shadow Media**") is a Delaware limited liability

11

company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Shadow Media transacts or has transacted business in this District and throughout the United States.

45.     Defendant Skylar Media LLC ("**Skylar Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Skylar Media transacts or has transacted business in this District and throughout the United States.

46.     Defendant Slayer Billing LLC ("**Slayer Billing**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Slayer Billing transacts or has transacted business in this District and throughout the United States.

47.     Defendant Spartacus Media LLC ("**Spartacus Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Spartacus Media transacts or has transacted business in this District and throughout the United States.

48.     Defendant Very Busy Media LLC ("**Very Busy Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Very Busy Media transacts or has transacted business in this District and throughout the United States.

49.     Defendant Wasabi Media LLC ("**Wasabi Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Wasabi Media transacts or has transacted business in this District and throughout the United States.

50.     Defendant Yamazaki Media LLC ("**Yamazaki Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Yamazaki Media transacts or has transacted business in this District and throughout the United States.

51.     Defendant Bronco Family Holdings LP a/k/a Bronco Holdings Family LP ("**Bronco Family Holdings**") is a Bahamas partnership with its principal place of business at 350 NE 60th St., Miami, FL 33137. Bronco Family Holdings transacts or has transacted business in this District and throughout the United States.

52.     Defendant BAL Family LP ("**BAL Family**") is a Delaware partnership with its principal place of business at 350 NE 60th St., Miami, FL 33137. BAL Family transacts or has transacted business in this District and throughout the United States.

53.     Defendant Cardozo Holdings LLC ("**Cardozo Holdings**") is a Nevis limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Cardozo Holdings transacts or has transacted business in this District and throughout the United States.

54.     Defendant 714 Media Ltd. ("**714 Media**") is a Belize corporation with its principal place of business at 350 NE 60th St., Miami, FL 33137. 714 Media transacts or has transacted business in this District and throughout the United States.

55.     Defendant Mac Media Ltd. ("**Mac Media**") is a Belize corporation with its principal place of business at 350 NE 60th St., Miami, FL 33137. Mac Media transacts or has transacted business in this District and throughout the United States.

56.     Defendant On Point Capital Partners LLC ("**On Point Capital Partners**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. On Point Capital Partners transacts or has transacted business in this District and throughout the United States.

57.     Defendant License America Management LLC ("**License America Management**") is a Delaware limited liability company with its principal place of business at

13

350 NE 60th St., Miami, FL 33137.  License America Management transacts or has transacted business in this District and throughout the United States.

58.     Defendant License America Holdings LLC (**"License America Holdings"**) is a Nevis limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  License America Holdings transacts or has transacted business in this District and throughout the United States.

59.     Defendant Blackbird Media LLC (**"Blackbird Media"**) is a Nevis limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Blackbird Media transacts or has transacted business in this District and throughout the United States.

60.     The Defendants described in Paragraphs 6 through 59 are collectively referred to as **"Corporate Defendants."**

61.     Defendant Burton Katz  (**"Katz"**) is the founder, owner, and chief executive officer of On Point Global, the founder, owner, and Manager of DG DMV, the owner and manager of Issue Based Media, a director and officer of BV Media, a partner and officer of Dragon Global, owner and member of Bronco Family Holdings, Cambridge Media Series, Direct Market, Falcon Media, GNR Media, On Point Guides, and Orange Grove Media, and the *de facto* principal behind the Transaction Entities (as defined in Paragraph 83) that act as fronts for Corporate Defendants' websites.

62.     Katz is the mastermind behind the Corporate Defendants' operation.  He signs documents on behalf of Corporate Defendants, including corporate incorporation and registration documents.  Katz has authority over the websites offering the services that generate revenue for the Corporate Defendants.  Katz has obtained merchant accounts for Transaction Entities (as defined in Paragraph 83) and signed the application for a mail drop used by the Corporate

14

Defendants. He is a signatory on numerous depository accounts containing funds from the Corporate Defendants' sales of guides and customer data. Since 2016, Katz has personally received more than $2.5 million in distributions and salary from the Corporate Defendants.

63.     At all times material to this Complaint, acting alone or in concert with others, Katz has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Katz resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

64.     Defendant Brent Levison ("**Levison**") is the chief administrative officer, general counsel, and co-owner of On Point Global, the current or former acting operations manager of Bella Vista Media Ltd., and a member and manager of BAL Family, BBTMM, Cambridge Media Series, Cardozo Holdings, Chametz Media, Direct Market, Eagle Media, GNR Media, MBL Media, and On Point Guides. Levison has organized and established Transaction and Operating Entities (as defined in Paragraphs 83 and 84), and signs legal documents, including incorporation and registration documents, on their behalf.

65.     Levison manages several aspects of the Corporate Defendants' operation. Levison's LinkedIn profile states that he "oversees the e-commerce and product fulfillment teams" for On Point Global and manages the company's "administrative functions." Levison has opened mail drop accounts and obtained merchant accounts for Transaction Entities (as defined in Paragraph 83) and signed applications for mail drops they use. He is a signatory on numerous depository accounts containing funds from the Corporate Defendants' sales of guides and customer data. Since 2016, Levison has personally received more than $1 million in distributions and salary from the Corporate Defendants.

15

66.     At all times material to this Complaint, acting alone or in concert with others, Levison has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Levison resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

67.     Defendant Robert Zangrillo ("**Zangrillo**") is the chairman, officer, and co-owner of On Point Global; an owner, officer, and partner of Dragon Global, Dragon Global Management, and Dragon Global Holdings; and a member and manager of DG DMV and On Point Capital Partners. Zangrillo organized On Point Capital Partners in 2015 and raised venture capital funding for the Corporate Defendants' operation. Zangrillo has signatory authority over at least two depository accounts containing funds from Corporate Defendants' sales of guides and customer data. Zangrillo's LinkedIn profile describes On Point's products as "reference guides, instructional books, and digital services," and notes that the company leverages consumer data gleaned through "premium and contextual domain names." Zangrillo has personally received more than $2 million in distributions and salary from the Corporate Defendants.

68.     At all times material to this Complaint, acting alone or in concert with others, Zangrillo has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Zangrillo resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

69.     Defendant Arlene Mahon ("**Mahon**") is the senior vice president of finance and accounting for On Point Global; the senior vice president, chief financial officer, officer, and

owner of Waltham Technologies; the general manager for PJ Groove Media; and a manager for nearly every Transaction Entity and two Operating Entities (as defined in Paragraphs 83 and 84): Cambridge Media Series and Issue Based Media.

70.     Mahon has signatory authority over more than two dozen depository accounts containing funds from Corporate Defendants' sales of guides and customer data.  In account opening documents for over 15 accounts held by Corporate Defendants at Regions Bank, Mahon used "arlene@issuebasedmedia.com" as her email address and identified her mailing address as 425 NW 26th Street, Miami, Florida.  Mahon has obtained a merchant account for a Transaction Entity (as defined in Paragraph 83) and signed the application for a mailbox used by the Corporate Defendants.

71.     At all times material to this Complaint, acting alone or in concert with others, Mahon has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Mahon resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

72.     Defendant Elisha Rothman ("**Rothman**") is a director of data processing, officer, and co-owner of On Point Global; a principal, officer, and owner of Direct Market; and an owner and manager of Cambridge Media Series, Domain Development Studios, Mac Media, On Point Guides, Orange Grove Media, and Yamazaki Media.

73.     Rothman has obtained merchant accounts for the Transaction Entities (as defined in Paragraph 83) and signed applications for mail drops they use.  He is a signatory on numerous depository accounts containing funds from Corporate Defendants' sales of guides and customer data.  In addition, Rothman has personally received more than $1 million in distributions and

salary from the Corporate Defendants.

74.     At all times material to this Complaint, acting alone or in concert with others, Rothman has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Rothman resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

75.     Defendant Christopher Sherman ("**Sherman**") is a director of data processing, officer, and manager of On Point Global; an officer and owner of Direct Market; and owner and manager of 714 Media, Coinstar Media, Domain Development Studios, GNR Media, and Pirate Media.

76.     Sherman has signatory authority over numerous depository accounts containing funds from Corporate Defendants' sales of guides and customer data. Sherman has obtained merchant accounts for the Transaction Entities (as defined in Paragraph 83) and signed applications for mail drops they use. In addition, Sherman is responsible for registering the domains Corporate Defendants use to gather consumers' personal information.

77.     At all times material to this Complaint, acting alone or in concert with others, Sherman has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Sherman resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

78.     Katz, Levison, Zangrillo, Mahon, Rothman, and Sherman are collectively referred to as "**Individual Defendants**."

79.     The Corporate and Individual Defendants are collectively referred to as

18

"**Defendants**."

## COMMON ENTERPRISE

80.    Corporate Defendants have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below. Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that commingled funds and employed unified marketing.

81.    Defendants frequently create and occasionally rename or abandon entities, leaving 52 currently active, known entities participating in their scheme.

82.    Each Corporate Defendant plays a role – whether transaction company, operating company, or holding company – in Defendants' unified web-marketing operation.

83.    The transaction entities are: Bluebird Media; Borat Media; BBTMM; Chametz Media; Chelsea Media; Coinstar Media; Domain Development Studios; Domain Dividends Media; Eagle Media; Falcon Media; GNR Media; Island Media, Leatherback Media; Macau Media, CEG Media; MBL Media; Orange and Blue Media; Orange Grove Media; Panther Media; Pirate Media; Pivot Media; PJ Groove Media; Sandman Media; Shadow Media; Skylar Media; Slayer Billing; Spartacus Media; Very Busy Media; Wasabi Media; and Yamazaki Media (collectively referred to as "**Transaction Entities**"). The Transaction Entities obtain credit-card processing accounts and depository bank accounts to allow Defendants to receive money from consumers and lead buyers. These Transaction Entities appear on Defendants' consumer-facing websites. In numerous instances, Defendants' employees organized the Transaction Entities; in some instances, one or more Individual Defendants organized the Transaction Entities.

84.    The operating entities are: BV Media; Cambridge Media Series; DG DMV; On

19

Point Domains; Final Draft Media; Direct Market; Dragon Global; Dragon Global Management; Dragon Global Holdings; Issue Based Media; On Point Employment; On Point Global; On Point Guides; G8 Labs; and Waltham Technologies (collectively referred to as **"Operating Entities"**). The Operating Entities carry out the business activities described below in Paragraphs 109-168.

85.     On Point Global, On Point Employment, and On Point Guides (collectively, **"On Point Defendants"**), are Defendants' primary umbrella companies and public face. Defendants' operation uses unified "On Point" branding on social media, company websites, and job listings. The On Point Defendants hire and manage the writers and developers who create the guides and consumer-facing websites described below. Individual Defendants Burton Katz, Robert Zangrillo, Elisha Rothman, and Brent Levison co-own the On Point Defendants.

86.     On Point Defendants' wholly owned subsidiaries BV Media and G8 Labs run Defendants' call center and web development office in Costa Rica and Uruguay, respectively. Employees of both BV Media and G8 Labs present themselves as On Point employees in social media postings, and each company presents itself as "an On Point company." On Point Defendants' employee Karla Jinesta manages BV Media, and On Point Defendants' employee Ramiro Baluga manages G8 Labs. The On Point Defendants' chief administrative officer and co-owner, Brent Levison, served as acting operations manager for BV Media when the On Point Defendants acquired BV Media. The On Point Defendants' website lists job openings for both call-center operators in Costa Rica and web developers in Uruguay. On Point Defendants' CEO, Burton Katz, stated in a LinkedIn post, "We have offices in Costa Rica and Uruguay with over 100 employees who elevate our front and back end development, graphics design, and call center support," and referred to the workers in Costa Rica and Uruguay as "our workforce."

87.     BV Media is a call center, handling calls with American consumers who

20

encountered Defendants' websites, in furtherance of Defendants' scheme. BV Media handles consumer complaints and issues or denies refunds to American consumers according to the On Point Defendants' refund policies. BV Media's company domain, bvmedia.com, is hosted on a DNS server in Ashburn, Virginia, in the United States.

88.    G8 Labs creates web content targeting consumers who seek a service from an American state or federal government agency, including a state motor vehicle or federal public benefits agency.

89.    DG DMV, On Point Domains, and Final Draft Media hold and manage web properties. DG DMV is a Delaware limited liability company, owned by Individual Defendant Burton Katz, that owns the URL DMV.com. When Katz organized DG DMV in 2015, a Dragon Global employee signed and filed its Florida registration papers and provided her Dragon Global email address as the contact. On Point Domains and Final Draft Media registered many of the operation's consumer-facing domain names with Domains By Proxy, a service that shields the identity of a domain name's registrant from public view.

90.    Waltham Technologies, Cambridge Media Series, and Issue Based Media handle administrative tasks. Waltham Technologies is listed on bank records as the employer of many On Point employees. Issue Based Media leases the operation's office space and pays its rent, and holds some of the operation's mail-forwarding accounts. Cambridge Media Series holds central operating bank accounts and has jointly held leases with Issue Based Media. Individual Defendant and On Point Defendant chief executive officer Burton Katz owns Issue Based Media and Cambridge Media Series; Individual Defendant and longtime On Point Defendant CFO Arlene Mahon organized Waltham Technologies.

91.    Dragon Global, Dragon Global Management, and Dragon Global Holdings

(collectively, "**Dragon Global Defendants**") are Defendants' finance division. The Dragon Global Defendants' website presents these companies' business as venture capital funding. According to that website, the Dragon Global Defendants' sole "early stage control" investment is the On Point Defendants. The Dragon Global Defendants' website states that the venture capital firm has "controlling, majority ownership stakes" in and works "in close partnership" with On Point Global.

92.    The Dragon Global Defendants' three partners are On Point Defendants' Chairman Robert Zangrillo, CEO Burton Katz, and CFO Robert Bellack. The Dragon Global Defendants and On Point Global Defendants share the same board of advisors.

93.    Direct Market sells the consumer data the common enterprise gathered to lead buyers. Its website calls Direct Market "masters in building online audiences and data management" and says its "technology enables us to target the right persons at the right moment." Two of its five team members, Individual Defendants Chris Sherman and Elisha Rothman, are the On Point Defendants' directors of data processing. Individual Defendants and On Point Defendants' officers Burton Katz, Elisha Rothman, Chris Sherman, and Brent Levison co-own Direct Market.

94.    The holding companies are: Bronco Family Holdings, BAL Family, Cardozo Holdings, 714 Media, Mac Media, On Point Capital Partners, License America Management, License America Holdings, and Blackbird Media (collectively referred to as "**Holding Companies**"). The Holding Companies exist primarily to hold Defendants' assets, often offshore.

95.    Bronco Family Holdings is a Bahamas partnership consisting of Individual Defendant Burton Katz and his wife, Marjan Katz. Both Burton Katz and Marjan Katz are U.S.

citizens who reside in Miami, Florida. Bronco Family Holdings holds Katz's interests in the Corporate Defendants and receives his proceeds from the operation described in this Complaint. Bronco Family Holdings often uses Individual Defendant Katz's home address in Miami as its address when conducting financial transactions. It has no place of business or employees, other than Katz, and conducts no activities other than holding Katz's assets.

96.     BAL Family is a Delaware partnership in which Brent Levison is a partner. It receives proceeds from the operation described in this Complaint. BAL Family often uses Levison's home address in Miami as its address when conducting financial transactions. It has no place of business or employees, other than Levison, and conducts no activities other than holding Levison's assets.

97.     Cardozo Holdings is a Nevis limited liability company of which Brent Levison is the sole member and owner. Levison is a U.S. citizen who resides in Miami, Florida. Cardozo Holdings holds Levison's interests in the Corporate Defendants and receives proceeds from the operation described in this Complaint. It has no place of business or employees, other than Levison, and conducts no activities other than holding Levison's assets.

98.     714 Media is a Belize entity of which Chris Sherman is the sole member and owner. Sherman is a U.S. citizen who resides in Miami, Florida. 714 Media holds Sherman's interests in the Corporate Defendants and receives his proceeds from the operation described in this Complaint. It has no place of business or employees, other than Sherman, and conducts no activities other than holding Sherman's assets.

99.     Mac Media is a Belize entity of which Elisha Rothman is the sole member and owner. Rothman is a U.S. citizen who resides in Miami, Florida. Mac Media holds Rothman's interests in the Corporate Defendants and receives his proceeds from the operation described in

23

this Complaint. It has no place of business or employees, other than Rothman, and conducts no activities other than holding Rothman's assets.

100.     On Point Capital Partners is a Delaware limited liability company of which Robert Zangrillo is the owner. On Point Capital Partners holds Zangrillo's interests in the Corporate Defendants and receives his proceeds from the operation described in this Complaint. It has no place of business or employees, other than Zangrillo, and conducts no activities other than holding Zangrillo's assets.

101.     Blackbird Media, License America Management, and License America Holdings hold Corporate Defendants' assets. License America Management is a Delaware limited liability company that is listed on corporate papers as a manager or member of other Corporate Defendants. License America Holdings and Blackbird Media are Nevis limited liability companies that receive proceeds from Corporate Defendants, primarily in accounts in St. Lucia. License America Holdings often uses a post-office box in Miami held by Defendant Waltham Technologies as its address when conducting financial transactions. Blackbird Media has paid Corporate Defendants' operating expenses from its account in St. Lucia.

102.     The Corporate Defendants share officers and employees. Burton Katz is the CEO of the On Point Defendants and one of three partners in Dragon Global. The second Dragon Global partner, Robert Zangrillo, is both Dragon Global's chairman and CEO and On Point's chairman. Bob Bellack is On Point's current CFO and Dragon Global's third partner. Arlene Mahon, On Point and Waltham Technologies' longtime CFO, is now On Point's senior VP of finance and accounting. Elisha Rothman and Chris Sherman are On Point's directors of data processing and also the team leaders at Direct Market. Brent Levison is On Point's chief administrative officer and general counsel, and he acted as BV Media's operations manager

24

when On Point acquired it. Presently, On Point employee Karla Jinesta manages BV Media. Ramiro Baluga is On Point's senior VP of publishing and CEO of G8 Labs. On Point and Dragon Global share the same roster of "advisors." On Point's employees created the Transaction Entities listed in Paragraph 83 to obtain merchant and bank accounts, and Arlene Mahon oversees nearly all of Corporate Defendants' bank accounts.

103. The Corporate Defendants share office space. They have operated primarily from two main Miami offices and one Boca Raton satellite offices. The first Miami headquarters was at 425 NW 26th St., which Issue Based Media leased from a third party and then "subleased" to the transaction companies. In 2016, Zangrillo acquired space for the second Miami office at 350 NE 60th St. through an LLC called Magic City Properties (a name Dragon Global uses for its real estate developments) and leased it to Issue Based Media. Some midlevel employees use the recently opened satellite office at 900 N. Federal Highway in Boca Raton, which Issue Based Media also leases and then "sublets" to the transaction companies. The transaction companies used mail drops across the country to obtain merchant accounts, but all of the mail drop applications listed one of the two Miami addresses as the operation's physical address. Some Corporate Defendants use the two Miami-area office addresses interchangeably on corporate or bank documents.

104. The Corporate Defendants commingle funds. They receive their revenues in the Transaction-Entity accounts, then move the money into Operating-Entity accounts or distribute it to business or personal holding accounts. Wire transfer records show millions of dollars in inter-company transfers over the past three years, including to the overseas Holding Companies.

105. The Corporate Defendants use unified branding in non-consumer-facing communications as "On Point" or "On Point Global." The On Point subsidiaries, including BV Media and G8, brand themselves as "an On Point company" and perform the operation's

25

essential functions under On Point's direction. The operation's employees consistently use On Point's name on their personal LinkedIn profiles. In contrast, the consumer-facing websites avoid giving any corporate markers except the transaction companies' names. This practice keeps On Point's name off the deceptive websites and associated accounts.

106. The Corporate Defendants operate under common control. Burton Katz and Robert Zangrillo together own controlling shares in the enterprise's main Operating Entities (Dragon Global and On Point), with Elisha Rothman, Chris Sherman, and Brent Levison also holding shares in On Point and Direct Market. The six individual defendants are signatories on dozens of the operation's bank accounts and the points of contact for many of its mail drops and merchant accounts. Katz, Zangrillo, Rothman, Sherman, and Levison use their shell Holding Companies (Bronco Family Holdings, On Point Capital Partners, Mac Media, 714 Media, and Cardozo Holdings, respectively) to hold their interests in the other Corporate Defendants and to receive their share of the proceeds.

107. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Individual Defendants have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

108. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

109. Since at least 2013, Defendants have operated websites that offer to conduct

government transactions (for example, renewing a driver's license, obtaining a fishing license, or checking eligibility for Section 8 housing benefits).

110.     Defendants obtain consumers' personal data and credit-card or debit-card information by promising the services described below.

111.     Defendants' sites do not deliver the services they tout. Instead, they offer consumers who complete a transaction a PDF of general, publicly available information about the service the consumer sought.

112.     Defendants have published or caused to be published more than 200 consumer-facing sites to induce consumers to submit payment and personal information. Their websites include but are not limited to those described and depicted in Paragraphs 113-168 below.

113.     Defendants' sites fall into categories: the largest segment offers motor vehicle-related transactions, including drivers' license services and car-registration services; some offer hunting and fishing licenses; and some offer eligibility determinations for public benefits, including housing vouchers, food stamps, or Medicaid.

114.     Within these categories, Defendants operate both "feeder" sites and "transaction" sites. Feeder sites appear when consumers use search engines to seek information about certain government transactions, often but not always as sponsored links. Feeder sites direct traffic to Defendants' transaction sites, which gather consumers' personal data and payment information.

115.     Defendants operate multiple nearly identical sites within each category (*e.g.*, motor vehicle-related transaction sites), which use similar wording, fonts, and graphics but various URLs (*e.g.*, license-driver.com, licenseguides.org, and registrationtags.com).

116.     Defendants purchase search-based advertising on search engine sites to place their sites high in the results when consumers search specified terms. Defendants also use search-

27

engine optimization to ensure that their links appear high in the non-sponsored results when consumers search terms related to their websites.

117.    For example, during test searches in the spring and summer of 2019, entering the phrases "section 8 housing apply," "renew Florida drivers license online," and "get fishing license" into online search engines brought up Defendants' sites as either the first- or second-listed link.

### Motor Vehicle-Related Websites

118.    Consumers who click on Defendants' search-engine links for motor vehicle-related services often first reach a feeder site.

119.    Defendants' most heavily used motor vehicle-related feeder site is DMV.com.

120.    As shown below, DMV.com's home-page banner headline promises "The DMV Made Easier" and features links to "Renew your License," "Renew Car Registration," and similar services.



*DMV.com landing page, accessed Feb. 15, 2019*

121.    Clicking one of the links leads to another page on DMV.com specific to the selected service. For example, clicking "Renew your License" leads to a page with a large-font hyperlink "Get Started Online with Drivers License Renewal Assistance" and a paragraph of text stating, "In most states, you can renew your drivers license online, by mail or in person. … During an online license renewal, you will be asked to identify yourself and pay the applicable service fees." Further down, the page also includes a U.S. map in which each state is clickable.



*DMV.com Renew Driver's License page, accessed March 8, 2019*

122. Clicking any of the "Get Started" links or one of the states in the clickable map brings consumers to one of Defendants' motor vehicle-related transaction sites (for example, license-driver.com, licenseguides.org, and registrationtags.com).

123. Defendants' other motor vehicle-related feeder-site URLs often use the formulation "[state]driverslicense.org," "[state]driverslicenses.org," or a similar variation. For example, they include floridadriverslicense.org, coloradodriverslicenses.org, californiadrivers.org, and texasdriverslicenses.org.

124. These motor vehicle-related feeder sites include the outline of the referenced state and the URL at the top left, with the orange text, "Your source for [state] drivers information," a headline referencing the service the consumer searched for, and a large hyperlink reading, "Get Started with Online Application Assistance." Clicking the links on the feeder site leads consumers to one of Defendants' transactions sites.



*Floridadriverslicenses.org, accessed from search results on March 8, 2019*

125.   As of March 8, 2019, reaching one of Defendants' transaction sites through a feeder-site link did not prompt any pop-up windows to open.  Sometime between March 8, 2019, and July 30, 2019, Defendants added a pop-up window that appears when consumers reach transaction sites through a link.  The pop-up window appears as follows:



*Pop-up on mycartitles.com, accessed July 30, 2019*

126.    The transaction sites have gray backgrounds, with a white box in the center containing a bold-font headline about completing the selected motor vehicle-related service (for example, "Renew Drivers License In Your State") and orange text touting, "GET ALL THE INFORMATION TO COMPLETE THE PROCESS NOW." A box within the center section contains the headline "VERIFY YOUR INFORMATION" and fields for the consumer's name, email address, and zip code. Below is a large orange "CONTINUE" button. At the bottom, the site contains a menu of links, including a link called "MONEY BACK GUARANTEE."



*License-driver.com landing page, accessed March 8, 2019*

127.    The transaction sites' landing pages also have several blocks or lines of text outside the central white-highlighted area that consumers are unlikely to see. These include a small line of gray text on the gray background at the top of the page above the menu that reads, "[URL] is in no way or fashion affiliated with any federal or local governmental agency or

offices." The blocks of grey-on-grey text generally state as follows, or use substantially similar language:

> Welcome to license-driver.com, your comprehensive resource for all you [sic] driver license-related services. The services we provide are available for free in the official sites or local offices. You can purchase for $23.98 and download our comprehensive guide and resources, which contains [sic] vital information in order to perform any DMV service and also included is the Roadside Assistant Program and other benefits including official forms and helpful checklists. By clicking continue I represent that I am 18+ years of age, I agree to receive email newsletters and offers targeted to my interests, sent by license-driver.com and their Marketing Partners. Please fill out form below to get the process started. [*See* Paragraph 126.]

128. Filling in the requested information and clicking "continue" leads a consumer to a second page with a list of services next to check-boxes, including "New Driver's License," "Replace Driver's License," and more; one box is pre-checked depending on which service the consumer selected on prior pages. This page includes the same blocks of text above and below the highlighted middle area as on the previous page.



*License-driver.com second page, accessed March 8, 2019 (redacted)*

129. Filling in the additional information and clicking "continue" leads the consumer through a page that contains a gray box of text referencing the consumer's agreement to hyperlinked terms and conditions, then to a final billing-information page. The billing information page displays the data the consumer previously entered, solicits payment information, and includes a large red "Submit" button. Below this central area are two small blocks of text that extol the value of the site "to assist you completing the process today," repeat language stating that the consumer accepts unspecified terms and conditions, and state that the site is privately owned and operated.



*License-driver.com billing page, accessed March 8, 2019 (redacted)*

130. When viewed on a mobile device, the drivers' transaction websites do not display the lines or blocks of text in the manner described in Paragraph 127. Instead, they display only one line of text on the bottom of the first page stating that the site is privately owned, and a block of text substantially similar to the text quoted in Paragraph 127 on the final billing-information

screen. Consumers do not see any of the foregoing text unless they scroll to the bottom of the screen on which it appears.

131.    After consumers submit payment, in some instances, the site simply links back to the landing page, and the consumer receives nothing. In other instances, the consumer receives an email containing a link to a downloadable PDF. The PDF contains general, publicly available information about the service the consumer sought (*i.e.*, driver's license or car-registration services).

132.    Regardless of whether the consumer received the PDF guide, Defendants charge consumers' credit or debit card twice. The first charge is smaller (in numerous instances, $3.99), and the second is larger (in numerous instances, $19.99).

133.    Through the representations described in Paragraphs 118-132 above and other substantially similar representations, Defendants' motor vehicle-related sites represent that completing a transaction through Defendants' sites will result in receipt of a valid license or car title, or other state motor-vehicle-related service.

134.    Defendants do not deliver drivers' licenses, car registrations, or any other state motor-vehicle-related services.

**Defendants' State Licensing Websites**

135.    Defendants also operate sites related to state fishing and hunting licenses, including, for example, hunting-license.org and fishandgamelicenses.org.

136.    Defendants' fishing and hunting license sites, like their other websites, often appear high in either sponsored links or search-engine results when consumers search words related to obtaining specific kinds of licenses.

137.    For example, on June 27, 2019, using a search engine to search for the phrase "get

fishing license" brought up Defendants' site fishinglicense.org as the first sponsored link.

138.     Clicking Defendants' links leads consumers to a home page that offers to simplify the process of obtaining a state license so consumers can begin the licensed activity (*e.g.*, hunting or fishing).

139.     For example, clicking fishinglicense.org from search results opens a landing page with a large photograph of a man fishing as the background.  A large headline reads, "New [state] Fishing License Assistance," and a box next to the headline reads, "Skip the Hassle & Start Fishing," and contains fields for entry of contact information. Below the contact information data fields on a white background are an orange "Continue" button and a white "VISIT GOVERNMENT SITE" button.  Small text below the button references fishing laws and regulations and "preparing you to obtain a fishing license" and notes, "Additionally, you can download our guide for only $28.98."  A line of small text at the top and bottom of the page that consumers are unlikely to see states that the site is not affiliated with the government.



*Fishinglicense.org landing page, accessed June 27, 2019*

140.    Clicking "Continue" leads to a page soliciting "Billing Information," with an orange "Submit" button below the data fields.  A paragraph of small text below the "Submit" button again references a guide that costs $28.98 and notes in the final sentence that the site is privately owned.



*Fishinglicense.org billing information page, accessed June 27, 2019 (redacted)*

141.    Submitting payment information takes consumers to a link to "Download Your Guide to Becoming an Expert Fisherman Now."  Clicking that link opens a PDF titled, "Guide to Become an EXPERT FISHERMAN."  The PDF includes general, publicly available information about fishing licenses, fishing skills, and fishing logistics.

142.    Defendants then charge the debit or credit card the consumer provided.

143.    Through the representations described in Paragraphs 135-142 above and other substantially similar representations, Defendants' state licensing sites represent that completing a transaction through Defendants' sites will result in receipt of a valid state activity license, including hunting and fishing licenses.

144.    Defendants do not deliver hunting or fishing licenses, or any other state licenses.

**Defendants' Public Benefits Websites**

145.    Defendants own and operate two types of public benefits websites. The first set of websites focuses on a single public benefit, including but not limited to Section 8 housing vouchers (*e.g.*, section-8-housing.org), food stamps (*e.g.*, food-stamps.com), or unemployment benefits (*e.g.*, unemploymentassistnace.org). The second set asks consumers to select a public benefit from a menu of government programs (*e.g.*, veteran-affairs.org and texas-benefits.org).

146.    Defendants' public benefits websites, like their other websites, often appear high in either sponsored links or search-engine results when consumers search words related to seeking assistance with or applying for public benefits.

147.    Consumers who reach defendants' public benefits websites are directed through a series of webpages that solicit their personal information by promising to check their eligibility for public benefits.

148.    Defendants' public benefits websites contain similar functionality and representations about the services they offer. These websites also solicit certain core pieces of personal information from consumers, including but not limited to their full name, address, date of birth, gender, telephone number, and email address.

149.    In some instances, consumers who reach the landing page for defendants' single benefit sites see a prominent data-entry form with some surrounding graphics and text. This initial data-entry form asks for consumers' first name, last name, email, and zip code and contains a large orange "Continue >>" button. The data-entry fields appear below a bold headline inviting consumers to "Find Out If You Are Eligible for [Public Benefit]." There are typically several blocks or lines of text outside the central form area. These include a small line

38

of text at the top and the bottom of the page that reads, "This site is privately owned and is

neither affiliated with, nor endorsed by, nor operated by any government agency. We provide

time-saving information."

150.    For example, the landing page of Defendants' Section 8 housing vouchers website

(section-8-housing.org), when accessed in April 2019, displayed data entry fields for the

consumer's first name, last name, email address, and zip code below a prominent headline that

read, "Find Out If You Are Eligible for the Section 8 Program." A large orange "Continue >>"

button appears underneath the data entry fields.



*Section-8-housing.org's landing page, access on April 17, 2019*

151.    In other instances, consumers who reach the landing page for defendants' single

benefit sites see a prominent menu of two or more options, such as "ELIGIBILITY" and "HOW

TO APPLY." In most instances, the menu options are displayed as large yellow buttons against

a blue background underneath a yellow headline that reads, "SELECT THE SERVICE YOU

ARE LOOKING FOR." Upon selecting any menu option, consumers reach a webpage with a

data-entry form nearly identical to that described in Paragraph 150.

152. Consumers who reach the landing page for defendants' multiple benefits sites see a menu of government programs, such as "MEDICAID" and "FOOD STAMPS," in brightly colored buttons underneath prominent headlines. For example, the landing page of Defendants' Texas Benefits website (texas-benefits.org), when accessed in August 2019, showed six government program option underneath the headlines "Government Programs in Texas" and "SELECT THE SERVICE YOU ARE LOOKING FOR."



**About Texas Benefits**

Texas has a wide variety of federally funded programs designed to assist low-income individuals, households and families These federal programs provide many types of benefits and services for Texas residents who need help obtaining necessities

153. In most instances, clicking on a program directs consumers to a page with further menu options displaying the services offered, such as "ELIGIBILITY" and "HOW TO APPLY." These intermediate pages vary in surrounding text and graphics, but the prominent features and representations largely resemble the pages described in Paragraph 151. Similar to those pages, consumers are directed to "SELECT THE SERVICE YOU ARE LOOKING FOR." Upon selecting a service, consumers reach a webpage with a data-entry form nearly identical to that described in Paragraph 150.

154. Filling out the information on the initial data-entry page and clicking "Continue >>" directs consumers through a series of near-identical webpages that seek additional personal information. In most instances, the subsequent webpages do not contain the blocks of text

underneath the central form area.



*Section-8-housing.org's second page, accessed on May 6, 2019*

155.    The form displays headlines about the selected transaction, such as "Confirm Your Address to Verify Eligibility" and "Confirm your information to get your Eligibility Guide." Underneath the headlines are questions or prompts for consumers.

156.    The sites ask consumers about various sensitive topics, including their employment status, income range, social security eligibility, health insurance, credit-card debt, and health conditions. Consumers seeking public benefits would reasonably expect to answer such questions to obtain an eligibility determination.

157.    Answering "Yes" to certain questions causes the browser to open a new window directed to a third-party website with a marketing offer. The original window navigates to the next webpage of the benefits website, continuing the series of questions.

158.    For example, when section-8-housing.org was accessed on May 6, 2019, clicking "Yes" in response to "Are you struggling with over $10k in debt?" on one webpage opened a page for Accredited Debt Relief, headlined "Reduce Your Debt & See How Much You Can Save." The original window navigated to the next webpage with a new question.

41



*Third-party webpage for acreliefnetwork.com, accessed on May 6, 2019*

159. Proceeding through the end of more than a dozen questions on the public benefits websites causes consumers' browsers to open a new window to a different website that contains marketing offers and links.

160. The original window navigates to a new webpage containing text at the top of the page stating, "Thank you, your guide has been sent to your email. Please check your inbox." The page contains marketing links and blocks of text containing general information about the selected public benefit.

161. For example, during the May 6, 2019 transaction, a prominent box with a headline "GET YOUR CREDIT REPORT" appeared right below the "thank you" text. Below and to the right of the box, the page displayed numerous other links and blocks of text about housing assistance.



*section-8-housing.org "Thank You" page, accessed on May 6, 2019*

162.    Consumers who provide all the requested information on Defendants' public benefits websites do not receive the promised eligibility determination.

163.    Consumers who provide all the requested information on Defendants' public benefits websites may receive an email with a link to download a PDF guide. The PDF guide contains general, publicly available information about the selected benefit.

164.    For example, after all the requested information was provided on Defendants' section-8-housing.org website during the May 2019 transaction, the email address provided during that transaction received an email with a link to download a PDF guide titled "Section 8 Housing." The PDF contained general, publicly available information about Section 8 housing vouchers.

165.    After providing information on Defendants' public benefits websites, consumers almost immediately begin receiving marketing emails from Defendants and third parties. Consumers also start receiving text messages containing marketing offers from Defendants and third parties. The emails and texts contain various marketing offers, including job-search-

43

assistance, free gift cards, and homebuyer grants.

166.    Typical information collected by Defendants on their motor vehicle-related websites includes consumers' full name, address, date of birth, email address, gender, and telephone number.  Typical information collected by Defendants on their public benefits websites includes all of the above and consumers' employment status, income range, credit card debt, medical and health conditions, and health insurance status.

167.    Defendants have received millions of dollars from selling the personal data they collected from consumers through deceptive marketing.

168.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

169.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

170.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I: Misrepresentations Related to Licensing and Motor Vehicle Services

171.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of guides, Defendants represent or have represented, directly or indirectly, expressly or by implication, that (1) consumers can complete state motor vehicle or state licensing transactions on Defendants' websites, and (2) consumers who submit payment and personal information will receive a state motor vehicle service or state license.

172.    In truth and in fact, (1) consumers cannot complete state motor vehicle or state

44

licensing transactions on Defendants' websites, and (2) consumers who submit payment and personal information do not receive a state motor vehicle service or state license.

173.    Therefore, Defendants' representation as set forth in Paragraph 171 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II: Misrepresentations Related to Public Benefits Services

174.    In numerous instances in connection the advertising, marketing, promotion of guides, Defendants represent or have represented, directly or indirectly, expressly or by implication, that (1) consumers can obtain eligibility determinations for public benefits on Defendants' websites; and (2) that consumers who submit personal information will receive eligibility determinations.

175.    In truth and in fact, (1) consumers cannot obtain public benefits eligibility determinations on Defendants' websites, and (2) consumers who submit personal information do not receive a public benefits eligibility determination.

176.    Therefore, Defendants' representations as set forth in Paragraph 174 are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### CONSUMER INJURY

177.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

178.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

46

Respectfully submitted,

Alden F. Abbott
General Counsel

Dated: 12/9/19

Sarah Waldrop (Special Bar No. A5502583)
(202) 326-3444; swaldrop@ftc.gov
Sana Chaudhry (Special Bar No. A5502350)
(202) 326-2679; schaudhry@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

JS 44 (Rev. 06/17) FLSD Revised 06/01/2017

# CIVIL COVER SHEET

19 25046

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**I. (a) PLAINTIFFS** Federal Trade Commission

**DEFENDANTS** On Point Global LLC, et al.

Cv- Williams

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Miami-Dade
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

FILED BY ___ D.C.

DEC 09 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sarah Waldrop and Sana Chaudhry, FTC, 600 Pennsylvania Ave NW,
Mailstop CC-9528, Washington, DC 20580, (202) 326-3444

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

| II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)* | | III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff* | | | | |
|---|---|---|---|---|---|---|
| | | *(For Diversity Cases Only)* | | | *and One Box for Defendant)* | |
| | | | PTF | DEF | | PTF | DEF |

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☑ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

| V. ORIGIN *(Place an "X" in One Box Only)* | | | | | | |
|---|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Re-filed (See VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district *(specify)* | ☐ 6 Multidistrict Litigation Transfer | ☐ 7 Appeal to District Judge from Magistrate Judgment | ☐ 8 Multidistrict Litigation – Direct File | ☐ 9 Remanded from Appellate Court |

**VI. RELATED/ RE-FILED CASE(S)** *(See instructions)*: a) Re-filed Case ☐YES ☑NO   b) Related Cases ☐YES ☐ NO

JUDGE: ROBERT N. SCOLA          DOCKET NUMBER: 14-cv-60166

**VII. CAUSE OF ACTION** Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 45(a), 53(b); Deceptive online marketing

LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

DATE   12/9/19          SIGNATURE OF ATTORNEY OF RECORD   Sarah Way

FOR OFFICE USE ONLY
RECEIPT #          AMOUNT          IFP          JUDGE          MAG JUDGE

United States District Court
for the
Southern District of Florida

Certified to be a true and
correct copy of the document on file
Angela E. Noble, Clerk,
U.S. District Court
Southern District of Florida

By _____
Deputy Clerk
Date 12-23-19

Federal Trade Commission,       )
Plaintiff,                      )
                                )
v.                              )   Civil Action No. 19-25046-Civ-Scola
                                )
On Point Global LLC and others, )
Defendants.                     )

### Sealed Order Granting Ex Parte
### Temporary Restraining Order and Order to Show Cause

The Plaintiff, the Federal Trade Commission ("FTC"), filed this suit seeking a permanent injunction and other equitable relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). Now before the Court is the FTC's ex parte motion for a temporary restraining order. For the reasons set forth below, the Court **grants** the FTC's ex parte motion for TRO (**ECF No. 4**).

### 1. Background[1]

Burton Katz, Robert Zangrillo, Brent Levison, Elisha Rothman, Christopher Sherman, and Arlene Mahon (collectively "individual defendants") run an online scheme that misleads consumers into providing money and personal information in exchange for government services such as renewing one's driver's license or determining one's eligibility for food stamps. The scheme is facilitated by 54 corporate defendants, which are comprised of operating companies, transaction entities, and holding companies. (ECF No. 4 at 14.) The operating companies perform the scheme's operations including creating the websites and handling administrative tasks. (*Id.*) The transaction entities hold the scheme's merchant processing accounts and revenues in a number of LLCs and bank accounts. (*Id.*) And, the holding companies exist only to hold or move assets, often offshore. (*Id.* at 15.) The individual defendants control the operation of all 54 corporate defendants. Moreover, the corporate defendants often share

---

[1] The factual background is taken from the complaint (ECF No. 1), the application for temporary restraining order (ECF No. 4), and the supporting evidentiary submissions.



office space, commingle their funds, and coordinate their marketing. (*Id.* at 17-18).

The Defendants operate websites that seemingly offer state licensing or assistance with public benefits, but do not actually provide such services. Defendants use misleading key words and often pay for search-engine advertising to appear as a top search result for consumers who are attempting to search for a government service. (*Id.* at 2.) Once the websites have attracted these consumers, the sites use misleading language and branding to induce consumers to relinquish their credit-card information, personal data, or both. The Defendants then sell the customers' data to dozens of marketers. (*Id.* at 11-12.)

For example, a consumer who searches "renew Florida driver's license online" in May 2019 would see, as the second result, the Defendants' website. Defendants' websites have URLs such as californiadrivers.org, floridadriverslicenses.org, and indianadriverslicence.org. (*Id.* at 2.) These sites have an image of the state's border and the text, "Your source for [state] driver's information." (*Id.*) Defendants also operate DMV.com, which offers links for driver's services in all 50 states. Under a heading titled "Online DMV Services," the site purports to offer services including license renewal, car registration renewal, and driving records' search. (*Id.*) DMV.com's Facebook page claims "you can renew your driver licenses online here!! Skip the lines doing it from you home" and linking to dmv.com/drivers-license-renewal. Consumers who click links for the online services are directed to forms for consumers to enter their personal information and credit card number. (*Id.*) Once consumers pay, they receive a PDF entitled "State Drivers License Guide," which includes general information about state vehicle services and safe-driving tips. (*Id.* at 3.) The sites do not provide the promised license renewal or other motor vehicle transaction.

Hundreds of customers have complained to law enforcement and consumer-protection organizations about the Defendants' misleading websites. By June 25, 2019, the FTC had received 953 complaints referencing one of the Defendants' websites. (*Id.* at 3-4.)

Additionally, the main Defendant Burton Katz was previously permanently enjoined by this Court in another lawsuit with the FTC. *See FTC v. Acquinty Interactive, LLC*, Case No. 0:14-cv-60166-SCOLA/OTAZO-REYES (S.D. Fla. 2014). The permanent injunction issued in that case prevents Katz from making misrepresentations to consumers and subjects him to ongoing compliance monitoring. (*Id.* at 20.) Pursuant to the order, in October 2015, Katz submitted a sworn compliance report to the FTC, in which he was required to "identify all

business activities." He failed to fully disclose all of his ownership interests and business activities on this form. (*Id.*)

### 2. Legal Standard

"In determining whether to grant a preliminary injunction under section 13(B), a district court must (1) determine the likelihood that the FTC will ultimately succeed on the merits and (2) balance the equities." *FTC v. IAB Mktg. Assoc.*, 746 F.3d 1228, 1232 (11th Cir. 2014). The FTC, unlike private plaintiffs, need not establish irreparable harm to obtain injunctive relief. *Id.* Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

    (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and]

    (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

### 3. Analysis

The declarations that the FTC submitted in support of its Application for Temporary Restraining Order support the following conclusions of law:

    B.    In numerous instances, the Defendants misrepresented on their websites that they would provide government services (*e.g.*, a driver's license, car registration, or eligibility determination for public benefits) to consumers who paid money and/or provided personal information.

    C.    There is good cause to believe that the Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). To establish a violation of section 5, the Plaintiff must prove: "(1) there was a representation, (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). The Plaintiff is therefore likely to prevail on the merits of this action. As demonstrated by the records of undercover purchases; consumer complaints and declarations; expert testing; corporate, banking, and payment processing records; and additional documents filed by the FTC, the FTC has established a

likelihood of success in showing that the Defendants have deceived consumers by misrepresenting the services they offer, thus inducing consumers to pay money or divulge personal information under false pretenses.

      E.    There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers – including monetary restitution, rescission, disgorgement or refunds – will occur from the sale, transfer, destruction or other disposition or concealment by Defendants of their assets or records, unless Defendants are immediately restrained and enjoined by order of this Court; and that, in accordance with Fed. R. Civ. P. 65(b), the interests of justice require that this Order be granted without prior notice to Defendants. Thus, there is good cause for relieving Plaintiff of the duty to provide Defendants with prior notice of its Motion for a Temporary Restraining Order.

      F.    Good cause exists for appointing a temporary receiver over the Receivership Entities, freezing Defendants' assets, permitting the Plaintiff and the Receiver immediate access to the Defendants' business premises, and permitting the Plaintiff and the Receiver to take expedited discovery.

      G.    Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, a temporary restraining order with an asset freeze, the appointment of a temporary receiver, immediate access to business premises, expedited discovery, and other equitable relief is in the public interest.

      H.    This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Federal Rule of Civil Procedure 65(b); and the All Writs Act, 28 U.S.C. § 1651.

      I.    No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

## 4. Definitions

For the purpose of this Order, the following definitions shall apply:

      A.    **"Asset"** means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

      B.    **"Corporate Defendant"** means On Point Global LLC; On Point Employment LLC; On Point Guides LLC f/k/a Rogue Media Services LLC; DG DMV LLC; On Point Domains LLC; Final Draft Media LLC; Waltham Technologies LLC; Cambridge Media Series LLC f/k/a License America Media Series LLC; Issue Based Media LLC; Bella Vista Media Ltd. also d/b/a BV Media; Carganet S.A. also d/b/a G8 Labs; Dragon Global LLC; Dragon Global Management LLC; Dragon Global Holdings LLC; Direct Market LLC; Bluebird Media LLC; Borat Media LLC; Bring Back the Magic Media LLC; Chametz Media LLC; Chelsea Media LLC; Coinstar Media LLC; Domain Development Studios LLC; Domain

Dividends Media LLC; Eagle Media LLC; Falcon Media LLC; GNR Media LLC; Island Media LLC; Leatherback Media Group LLC; Macau Media LLC; CEG Media LLC f/k/a Matzoh Media LLC; MBL Media Ltd. Inc.; Orange and Blue Media LLC; Orange Grove Media LLC; Panther Media LLC; Pirate Media LLC; Pivot Media Group LLC; PJ Groove Media LLC; Sandman Media Group LLC; Shadow Media LLC; Skylar Media LLC; Slayer Billing LLC; Spartacus Media LLC; Very Busy Media LLC; Wasabi Media LLC; Yamazaki Media LLC; Bronco Family Holdings LP a/k/a Bronco Holdings Family LP; BAL Family LP; Cardozo Holdings LLC; 714 Media Ltd.; Mac Media Ltd.; On Point Capital Partners LLC; License America Management LLC; License America Holdings LLC; Blackbird Media LLC; and each of their subsidiaries, affiliates, successors, and assigns.

C. **"Defendant(s)"** means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination.

D. **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes, but is not limited to, any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

F. **"Individual Defendant(s)"** means Burton Katz, Brent Levison, Robert Zangrillo, Arlene Mahon, Elisha Rothman, and Christopher Sherman, individually, collectively, or in any combination.

G. **"Receiver"** means the temporary receiver appointed in Section XI of this Order and any deputy receivers that shall be named by the temporary receiver.

H. **"Receivership Entities"** means Corporate Defendants as well as any other entity that has conducted any business related to online marketing of government services or instructional guides, including receipt of Assets derived

from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

**5. Conclusion**

For the foregoing reasons, it is **ordered and adjudged** that the Plaintiff's Application for Temporary Restraining Order (**ECF No. 4**) is **granted** as follows:

(1) **Prohibited Business Activities**. The Defendants, the Defendants' officers, agents, employees, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

A.    That consumers can complete state motor vehicle or state licensing transactions or obtain public-benefits eligibility determinations on Defendants' websites;

B.    That consumers who submit payment and/or personal information on Defendants' websites will receive a state motor vehicle service or license, or a public-benefits eligibility determination; and

C.    Any other fact material to consumers concerning any good or service, such as:  the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

(2) **Prohibition on Release of Customer Information**. The Defendants, the Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; and

B.    Benefitting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that

any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

      C.    Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

      (3)    **Asset Freeze.** The Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

      A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any assets that are:

        1.    owned or controlled, directly or indirectly, by any Defendant;

        2.    held, in part or in whole, for the benefit of any Defendant;

        3.    in the actual or constructive possession of any Defendant; or

        4.    owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant.

      B.    Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order;

      C.    Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; and

      D.    Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.

      E.    The assets affected by this Section shall include: (1) all assets of Defendants as of the time this Order is entered; and (2) assets obtained by Defendants after this Order is entered if those assets are derived from any

activity that is the subject of the Complaint in this matter or that is prohibited by this Order. This Section does not prohibit any transfers to the Receiver or repatriation of foreign assets specifically required by this order.

(4) **Duties of Asset Holders and Other Third Parties.** Any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any document on behalf of any Defendant or any asset that has been owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any document or asset associated with credits, debits, or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to any Defendant, including through a credit card account, shall:

A.     Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such document or asset, as well as all documents or other property related to such assets, except by further order of this Court; provided, however, that this provision does not prohibit an Individual Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B.     Deny any person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.     Provide the Plaintiff's counsel and the Receiver, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each asset or account covered by this Section:

1.      The identification number of each such account or asset;
2.      The balance of each such account, or a description of the nature and value of each such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and
3.      The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

D.      Upon the request of the Plaintiff's counsel or the Receiver, promptly provide Plaintiff's counsel and the Receiver with copies of all records or other documents pertaining to any account covered by this Section or asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

E.      Provided, however, that this Section does not prohibit any transfers to the Receiver or repatriation of foreign assets specifically required by this Order.

(5)      **Financial Disclosures.** Each Defendant, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver:

A.      Completed financial statements on the forms attached to this Order as Attachment A (Financial Statement of Individual Defendant) for each Individual Defendant, and Attachment B (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

B.      Completed Attachment C (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

(6)      **Foreign Asset Repatriation.** Within five (5) days following the service of this Order, each Defendant shall:

A.      Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all assets, documents, and accounts outside of the United States which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or

entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

      B.    Take all steps necessary to provide Plaintiff's counsel and Receiver access to all documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as Attachment D;

      C.    Transfer to the territory of the United States all documents and assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

      D.    The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such documents or assets; and (2) serve this Order on any such financial institution or other entity.

      (7)   **Non-Interference with Repatriation.** The Defendants, the Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by this Order, including, but not limited to:

      A.    Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' assets have been fully repatriated pursuant to this Order; or

      B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' assets have been fully repatriated pursuant to this Order.

      (8)   **Consumer Credit Reports.** The Plaintiff may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit

reporting agency from which such reports are requested shall provide them to Plaintiff.

(9) **Preservation of Records.** The Defendants, the Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from:

A.       Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, documents that relate to: (1) the business, business practices, assets, telephone records, email account records, or business or personal finances of any Defendant; (2) any webpage or website operated, in whole or in part, on any Defendant's or Defendants' behalf; (3) any electronic communications sent or received by Defendants; (4) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (5) the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

B.       Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' assets.

(10) **Report of New Business Activity.** The Defendants, the Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby temporarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

(11) **Temporary Receiver. Melanie Damian** is appointed as temporary receiver of the Receivership Entities with full powers of an equity receiver. The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

(12) **Duties and Authority of Receiver.** The Receiver is directed and authorized to accomplish the following:

A.     Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.     Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated;

C.     Take exclusive custody, control, and possession of all documents or assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

D.     Conserve, hold, manage, and prevent the loss of all assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those assets.  The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities.  The Receiver shall have full power to sue for, collect, and receive, all assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities.  Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

E.     Investigate any claims the Receiver on behalf of the Receivership Defendants may possess against third parties, including but not limited to claims seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers, and claims in contract, law, tort, and equity.

F.     Obtain, conserve, hold, manage, and prevent the loss of all documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such documents.  The Receiver shall:  divert mail; preserve all documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials; take possession of all electronic documents of the Receivership Entities stored onsite or remotely; take whatever

steps necessary to preserve all such documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely.

  G. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

  H. Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Entities, such as rental payments;

  I. Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Entities. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security. If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

  J. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

  K. Enter into and cancel contracts and purchase insurance as advisable or necessary;

L.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

M.     Make an accounting, as soon as practicable, of the assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

N.     Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

O.     Issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

P.     Open one or more bank accounts at designated depositories for funds of the Receivership Entities.  The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts.  The Receiver shall serve copies of monthly account statements on all parties;

Q.     Maintain accurate records of all receipts and expenditures incurred as Receiver;

R.     Allow the Plaintiff's representatives, agents, and assistants, as well as the Defendants' representatives and the Defendants themselves, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business.  The purpose of this access shall be to inspect and copy any and all books, records, documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

S.     Allow the Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all documents in the possession, custody, or control of the Receivership Entities;

T.     Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

U.     Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

V.     If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can

challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity; and

W.    If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

(13)    **Receiver's Report.** The Receiver must:

A.    File a summary report with the Court of the temporary receivership at or before the hearing provided for in Section XXVI, and include the following information:

1.    The steps taken by the Receiver to implement the terms of the TRO;

2.    The known value of assets and sum of liabilities of the Receivership Entities;

3.    The steps the Receiver intends to take in the future to protect receivership assets, recover receivership assets from third parties, and adjust receivership liabilities if s/he is appointed a permanent receiver;

4.    the Receiver's opinion on whether any portion of the business of any of the Receivership Entities can continue to operate legally and profitably; and

5.    Any other matters which the Receiver believes should be brought to the Court's attention.

(14)    **Transfer of Receivership Property to Receiver.** The Defendants and any other person, with possession, custody or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the assets and documents of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.    All assets held by or for the benefit of the Receivership Entities;

B.     All documents or assets associated with credits, debits, or charges made on behalf of any Receivership Entity, wherever situated, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities;

C.     All documents of or pertaining to the Receivership Entities;

D.     All computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities;

E.     All assets and documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

F.     All keys, codes, user names and passwords necessary to gain or to secure access to any assets or documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

G.     In the event that any person or entity fails to deliver or transfer any asset or document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.

(15)   **Provision of Information to Receiver.** The Defendants shall immediately provide to the Receiver:

A.     A list of all assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.     A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

C.     A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

(16)   **Cooperation with the Receiver.** The Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Receivership entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and

assistance shall include, but is not limited to, providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the assets and sales of the Receivership Entities.

(17) **Non-Interference with the Receiver.** The Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

A.     Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the assets or documents subject to the receivership;

B.     Transacting any of the business of the Receivership Entities;

C.     Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.     Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

(18) **Stay of Actions.** Except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Entities, including, but not limited to:

A.     Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

C.     Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

Provided, however, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

(19)     **Compensation of Receiver.** The Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, in the possession or control of, or which may be received by, the Receivership Entities.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

(20)     **Receiver's Bond.** By no later than January 9, 2020, the Receiver shall file with the Clerk of this Court a bond in the sum of $10,000, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.  28 U.S.C. § 754.

(21)  **Immediate Access to Business Premises and Records.** It is further ordered that:

A.     In order to allow Plaintiff and the Receiver to preserve assets and evidence relevant to this action and to expedite discovery, Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to the business premises and storage facilities, owned, controlled, or used by the Receivership Entities.  Such locations include, but are not limited to, 350 NE 60th St., Miami, FL, 33137; 900 N. Federal Hwy. #100, Boca Raton, FL, 33432; 9200 Sunset Blvd. #1201, West Hollywood, CA, 90069; Luis Bonavita, World Trade Center Free Zone, Of. 001, Montevideo, Uruguay; Rio Segundo, Oficentro Plaza Aeropuerto, Oficina C-19, Alajuela, Costa Rica; and any offsite location or commercial mailbox used by the Receivership Entities. The Receiver may exclude Defendants, Receivership Entities, and their employees from the business premises during the immediate access.

B.     Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied.  Plaintiff shall return any removed materials to the Receiver within five (5) business days of completing inventorying and copying, or such time as is agreed upon by Plaintiff and the Receiver;

C.     Plaintiff's access to the Receivership Entities' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff.

D.     Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Order;

E.     If any documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and Receivership Entities shall produce to the Receiver all such documents, computers, and electronic storage devices, along with any codes or passwords needed for access.  In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

F.     If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Entity shall, immediately upon

receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third-party to attempt to access, the communications or records.

(22) **Distribution of Order By Defendants.** The Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, and provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

(23) **Expedited Discovery.** Notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 33, 34, and 45, Plaintiff and the Receiver are granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' assets; (2) the nature, location, and extent of Defendants' business transactions and operations; (3) documents reflecting Defendants' business transactions and operations; or (4) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Plaintiff and the Receiver may take the deposition of parties and non-parties. Forty-eight (48) hours' notice shall be sufficient notice for such depositions. The limitations and conditions set forth in Rules 30(a)(2)(B) and 31(a)(2)(B) of the Federal Rules of Civil Procedure regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such deposition taken pursuant to this Section shall not be counted towards the deposition limit set forth in Rules 30(a)(2)(A) and 31(a)(2)(A) and depositions may be taken by telephone or other remote electronic means;

B. Plaintiff and the Receiver may serve upon parties requests for production of documents or inspection that require production or inspection within five (5) days of service, provided, however, that three (3) days of notice

shall be deemed sufficient for the production of any such documents that are maintained or stored only in an electronic format.

       C.    Plaintiff and the Receiver may serve upon parties interrogatories that require response within five (5) days after Plaintiff serves such interrogatories;

       D.    The Plaintiff and the Receiver may serve subpoenas upon non-parties that direct production or inspection within five (5) days of service.

       E.    Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

       F.    Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

       G.    The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

       (24)   **Service of this Order.** Copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, documents, and exhibits filed contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any asset or document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity. **Upon receipt of this Order, the Plaintiff must serve the appointed temporary receiver, Melanie Damian, with a copy of this Order.**

       (25)   **Preliminary Injunction Hearing.** Pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on the Friday January 10, 2020 at 9:00 a.m., to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint, continuing the freeze of their assets, continuing the receivership, and imposing such additional relief as may be appropriate.

(26) **Briefs and Affidavits Concerning Preliminary Injunction.**
Defendants shall file with the Court and serve on Plaintiff's counsel any
answering pleadings, affidavits, motions, expert reports or declarations, witness
lists, or legal memoranda no later than four (4) days prior to the preliminary
injunction hearing scheduled pursuant to this Order. Plaintiff may file
responsive or supplemental pleadings, materials, affidavits, witness lists, or
memoranda with the Court and serve the same on counsel for Defendants no
later than one (1) day prior to the preliminary injunction hearing. Should any
party seek to present live testimony, the party's witness list shall set forth the
name, address, and telephone number of each proposed witness, and a detailed
summary or affidavit revealing the substance of each proposed witness's
expected testimony. Provided that such affidavits, pleadings, motions, expert
reports, declarations, witness lists, or legal memoranda or oppositions must be
served by personal or overnight delivery, facsimile or email, and be received by
the other party or parties no later than 5:00 p.m. (Eastern time) on the
appropriate dates set forth in this Section.

(27) **Duration of the Order.** This Order shall expire fourteen (14) days
from the date of entry noted below, unless within such time, the Order is
extended for an additional period pursuant to Fed. R. Civ. P. 65(b)(2).

**Done and ordered** at Miami, Florida, on December 13, 2019.

Robert N. Scola, Jr.
United States District Judge

Case 1:19-cv-25046-RNS *SEALED* Document 4-2 Entered on FLSD Docket 12/09/2019 Page 1 of 12

# Attachment A

**FEDERAL TRADE COMMISSION**

**FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT**

**Definitions and Instructions:**

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") in the first field only of any item that does not apply to you. If you cannot fully answer a question, explain why.

2. "Dependents" include your spouse, live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3. "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5. Type or print legibly.

6. Initial each page in the space provided in the lower right corner.

7. Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or devise a material fact; makes any materially false, fictitious or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any ( . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

### Item 1. Information About You

| Full Name | Social Security No. | |
|---|---|---|

| Current Address of Primary Residence | Driver's License No. | State Issued |
|---|---|---|

| | Phone Numbers<br>Home: ( )<br>Fax: ( ) | Date of Birth: / /<br>(mm/dd/yyyy) |
|---|---|---|
| | | Place of Birth |

☐Rent ☐Own   From (Date): / / (mm/dd/yyyy)   E-Mail Address

Internet Home Page

### Previous Addresses for past five years (if required, use additional pages at end of form)

| Address | From: / / (mm/dd/yyyy)   Until: / / (mm/dd/yyyy) |
|---|---|
| | ☐Rent ☐Own |
| Address | From: / /   Until: / / |
| | ☐Rent ☐Own |
| Address | From: / /   Until: / / |
| | ☐Rent ☐Own |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

### Item 2. Information About Your Spouse or Live-In Companion

| Spouse/Companion's Name | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| Address (if different from yours) | Phone Number ( ) | Place of Birth |
| | ☐Rent ☐Own   From (Date): / / (mm/dd/yyyy) | |

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they were used:

| Employer's Name and Address | Job Title | |
|---|---|---|
| | Years in Present Job | Annual Gross Salary/Wages $ |

### Item 3. Information About Your Previous Spouse

| Name and Address | Social Security No. |
|---|---|
| | Date of Birth / / (mm/dd/yyyy) |

### Item 4. Contact Information (name and address of closest living relative other than your spouse)

| Name and Address | Phone Number ( ) |
|---|---|

Initials: _____

## Item 5. Information About Dependents (whether or not they reside with you)

| Name and Address | Social Security No. / / | Date of Birth / / (mm/dd/yyyy) |
|---|---|---|
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |
| Name and Address | Social Security No. | Date of Birth / / (mm/dd/yyyy) |
| | Relationship | |

## Item 6. Employment Information/Employment Income

Provide the following information for this year-to-date and for each of the previous five full years, for each business entity of which you were a director, officer, member, partner, employee (including self-employment), agent, owner, shareholder, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, distributions, draws, consulting fees, loans, loan payments, dividends, royalties, and benefits for which you did not pay (e.g., health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. |
|---|---|---|---|
| | From (Month/Year) / | To (Month/Year) / | Year Income 20 $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | $ |
| Positions Held | From (Month/Year) / | To (Month/Year) / | $ |
| | / | / | $ |
| | / | / | $ |

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. |
|---|---|---|---|
| | From (Month/Year) / | To (Month/Year) / | Year Income 20 $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | $ |
| Positions Held | From (Month/Year) / | To (Month/Year) / | $ |
| | / | / | $ |
| | / | / | $ |

| Company Name and Address | Dates Employed | | Income Received: Y-T-D & 5 Prior Yrs. |
|---|---|---|---|
| | From (Month/Year) / | To (Month/Year) / | Year Income 20 $ $ |
| Ownership Interest? ☐ Yes ☐ No | | | $ |
| Positions Held | From (Month/Year) / | To (Month/Year) / | $ |
| | / | / | $ |
| | / | / | $ |

Initials: _____

**Item 7. Pending Lawsuits Filed By or Against You or Your Spouse**
List all pending lawsuits that have been filed by or against you or your spouse in any court or before an administrative agency in the United States or in any foreign country or territory. *Note: At Item 12, list lawsuits that resulted in final judgments or settlements in your favor. At Item 21, list lawsuits that resulted in final judgments or settlements against you.*

| Caption of Proceeding | Court or Agency and Location | Case No. | Nature of Proceeding | Relief Requested | Status or Disposition |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 8. Safe Deposit Boxes**
List all safe deposit boxes, located within the United States or in any foreign country or territory, whether held individually or jointly and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.

| Name of Owner(s) | Name & Address of Depository Institution | Box No. | Contents |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Initials: _____

## FINANCIAL INFORMATION

**REMINDER:** When an item asks for information regarding your "assets" and "liabilities" include ALL assets and liabilities, located within the United States or in any foreign country or territory, or institution, whether held individually or jointly, and whether held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. In addition, provide all documents requested in Item 24 with your completed Financial Statement.

### ASSETS

**Item 9. Cash, Bank, and Money Market Accounts**

List cash on hand (as opposed to cash in bank accounts or other financial accounts) and all bank accounts, money market accounts, or other financial accounts, including but not limited to checking accounts, savings accounts, and certificates of deposit. The term "cash on hand" includes but is not limited to cash in the form of currency, uncashed checks, and money orders.

| a.  Amount of Cash on Hand $ | | Form of Cash on Hand | | |
|---|---|---|---|---|
| b.  Name on Account | Name & Address of Financial Institution | | Account No. | Current Balance |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

**Item 10.  Publicly Traded Securities**

List all publicly traded securities, including but not limited to, stocks, stock options, corporate bonds, mutual funds, U.S. government securities (including but not limited to treasury bills and treasury notes), and state and municipal bonds. Also list any U.S. savings bonds.

| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
|---|---|---|---|---|
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |
| Owner of Security | | Issuer | Type of Security | No. of Units Owned |
| Broker House, Address | | Broker Account No. | | |
| | | Current Fair Market Value $ | Loan(s) Against Security $ | |

Initials: _____

Case 1:19-cv-25046-RNS Document 17-1 Entered on FLSD Docket 02/13/2019 Page 29 of 55
Case 1:19-mc-00020-MRB *SEALED* Document 4-1 Entered on FLSD Docket 01/13/2019 Page 29 of 55
Case 1:19-cv-25046-RNS *SEALED* Document 4-2 Entered on FLSD Docket 12/09/2019 Page 7 of 12

## Item 11. Non-Public Business and Financial Interests

List all non-public business and financial interests, including but not limited to any interest in a non-public corporation, subchapter-S corporation, limited liability corporation ("LLC"), general or limited partnership, joint venture, sole proprietorship, international business corporation or personal investment corporation, and oil or mineral lease.

| Entity's Name & Address | Type of Business or Financial Interest (e.g., LLC, partnership) | Owner (e.g., self, spouse) | Ownership % | If Officer, Director, Member or Partner, Exact Title |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## Item 12. Amounts Owed to You, Your Spouse, or Your Dependents

| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
|---|---|---|---|
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |
| Debtor's Name & Address | Date Obligation Incurred (Month/Year) / | Original Amount Owed $ | Nature of Obligation (if the result of a final court judgment or settlement, provide court name and docket number) |
| | Current Amount Owed $ | Payment Schedule $ | |
| Debtor's Telephone | Debtor's Relationship to You | | |

## Item 13. Life Insurance Policies

List all life insurance policies (including endowment policies) with any cash surrender value.

| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
|---|---|---|---|
| | Insured | Loans Against Policy $ | Surrender Value $ |
| Insurance Company's Name, Address, & Telephone No. | Beneficiary | Policy No. | Face Value $ |
| | Insured | Loans Against Policy $ | Surrender Value $ |

## Item 14. Deferred Income Arrangements

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, other retirement accounts, and college savings plans (e.g., 529 Plans).

| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
|---|---|---|---|
| | Date Established / / (mm/dd/yyyy) | Type of Plan | Surrender Value before Taxes and Penalties $ |
| Trustee or Administrator's Name, Address & Telephone No. | Name on Account | | Account No. |
| | Date Established / / | Type of Plan | Surrender Value before Taxes and Penalties $ |

Initials: _____

## Item 15. Pending Insurance Payments or Inheritances
List any pending insurance payments or inheritances owed to you.

| Type | Amount Expected | Date Expected (mm/dd/yyyy) |
|---|---|---|
| | $ | / / |
| | $ | / / |
| | $ | / / |

## Item 16. Vehicles
List all cars, trucks, motorcycles, boats, airplanes, and other vehicles.

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

| Vehicle Type | Year | Registered Owner's Name | Purchase Price $ | Original Loan Amount $ | Current Balance $ |
|---|---|---|---|---|---|
| Make | | Registration State & No. | Account/Loan No. | Current Value $ | Monthly Payment $ |
| Model | | Address of Vehicle's Location | Lender's Name and Address | | |

## Item 17. Other Personal Property
List all other personal property not listed in Items 9-16 by category, whether held for personal use, investment or any other reason, including but not limited to coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

Initials: _____

## Item 18. Real Property
List all real property interests (including any land contract)

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy) / / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

| Property's Location | Type of Property | Name(s) on Title or Contract and Ownership Percentages |
|---|---|---|

| Acquisition Date (mm/dd/yyyy) / / | Purchase Price $ | Current Value $ | Basis of Valuation |
|---|---|---|---|

| Lender's Name and Address | Loan or Account No. | Current Balance On First Mortgage or Contract $ |
|---|---|---|
| | | Monthly Payment $ |

| Other Mortgage Loan(s) (describe) | Monthly Payment $ | ☐ Rental Unit |
|---|---|---|
| | Current Balance $ | Monthly Rent Received $ |

## LIABILITIES

## Item 19. Credit Cards
List each credit card account held by you, your spouse, or your dependents, and any other credit cards that you, your spouse, or your dependents use, whether issued by a United States or foreign financial institution.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## Item 20. Taxes Payable
List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependents.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

Initials: _____

**Item 21. Other Amounts Owed by You, Your Spouse, or Your Dependents**
List all other amounts, not listed elsewhere in this financial statement, owed by you, your spouse, or your dependents.

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred / / (mm/dd/yyyy) | Original Amount Owed $ | Current Amount Owed $ | Payment Schedule |
|---|---|---|---|

| Lender/Creditor's Name, Address, and Telephone No. | Nature of Debt (if the result of a court judgment or settlement, provide court name and docket number) | | |
|---|---|---|---|
| | Lender/Creditor's Relationship to You | | |

| Date Liability Was Incurred / / (mm/dd/yyyy) | Original Amount Owed $ | Current Amount Owed $ | Payment Schedule |
|---|---|---|---|

## OTHER FINANCIAL INFORMATION

**Item 22. Trusts and Escrows**
List all funds and other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Include any legal retainers being held on your behalf by legal counsel. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.

| Trustee or Escrow Agent's Name & Address | Date Established (mm/dd/yyyy) | Grantor | Beneficiaries | Present Market Value of Assets* |
|---|---|---|---|---|
| | / / | | | $ |
| | / / | | | $ |
| | / / | | | $ |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

**Item 23. Transfers of Assets**
List each person or entity to whom you have transferred, in the aggregate, more than $5,000 in funds or other assets during the previous five years by loan, gift, sale, or other transfer (exclude ordinary and necessary living and business expenses paid to unrelated third parties). For each such person or entity, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value* | Transfer Date (mm/dd/yyyy) | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | / / | |
| | | $ | / / | |
| | | $ | / / | |

*If the market value of any asset is unknown, describe the asset and state its cost, if you know it.

Initials: _____

| Item 24. Document Requests | |
|---|---|
| Provide copies of the following documents with your completed Financial Statement. | |
| | Federal tax returns filed during the last three years by or on behalf of you, your spouse, or your dependents. |
| | All applications for bank loans or other extensions of credit (other than credit cards) that you, your spouse, or your dependents have submitted within the last two years, including by obtaining copies from lenders if necessary. |
| Item 9 | For each bank account listed in Item 9, all account statements for the past 3 years. |
| Item 11 | For each business entity listed in Item 11, provide (including by causing to be generated from accounting records) the most recent balance sheet, tax return, annual income statement, the most recent year-to-date income statement, and all general ledger files from account records. |
| Item 17 | All appraisals that have been prepared for any property listed in Item 17, including appraisals done for insurance purposes. You may exclude any category of property where the total appraised value of all property in that category is less than $2,000. |
| Item 18 | All appraisals that have been prepared for real property listed in Item 18. |
| Item 21 | Documentation for all debts listed in Item 21. |
| Item 22 | All executed documents for any trust or escrow listed in Item 22. Also provide any appraisals, including insurance appraisals that have been done for any assets held by any such trust or in any such escrow. |

## SUMMARY FINANCIAL SCHEDULES

### Item 25. Combined Balance Sheet for You, Your Spouse, and Your Dependents

| Assets | | Liabilities | |
|---|---|---|---|
| Cash on Hand (Item 9) | $ | Loans Against Publicly Traded Securities (Item 10) | $ |
| Funds Held in Financial Institutions (Item 9) | $ | Vehicles - Liens (Item 16) | $ |
| U.S. Government Securities (Item 10) | $ | Real Property – Encumbrances (Item 18) | $ |
| Publicly Traded Securities (Item 10) | $ | Credit Cards (Item 19) | $ |
| Non-Public Business and Financial Interests (Item 11) | $ | Taxes Payable (Item 20) | $ |
| Amounts Owed to You (Item 12) | $ | Amounts Owed by You (Item 21) | $ |
| Life Insurance Policies (Item 13) | $ | Other Liabilities (Itemize) | |
| Deferred Income Arrangements (Item 14) | $ | | $ |
| Vehicles (Item 16) | $ | | $ |
| Other Personal Property (Item 17) | $ | | $ |
| Real Property (Item 18) | $ | | $ |
| Other Assets (Itemize) | | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| Total Assets | $ | Total Liabilities | $ |

### Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents

Provide the current monthly income and expenses for you, your spouse, and your dependents. Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| Income (State source of each item) | | Expenses | |
|---|---|---|---|
| Salary - After Taxes<br>Source: | $ | Mortgage or Rental Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties<br>Source: | $ | Property Taxes for Residence(s) | $ |
| Interest<br>Source: | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains<br>Source: | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income<br>Source: | $ | Food Expenses | $ |
| Profits from Sole Proprietorships<br>Source: | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs<br>Source: | $ | Utilities | $ |

Initials: _____

| Item 26. Combined Current Monthly Income and Expenses for You, Your Spouse, and Your Dependents (cont.) | | | | |
|---|---|---|---|---|
| Distributions from Trusts and Estates Source: | $ | Medical Expenses, Including Insurance | | $ |
| Distributions from Deferred Income Arrangements Source: | $ | Other Insurance Premiums | | $ |
| Social Security Payments | $ | Other Transportation Expenses | | $ |
| Alimony/Child Support Received | $ | Other Expenses (Itemize) | | |
| Gambling Income | $ | | | $ |
| Other Income (Itemize) | | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| | $ | | | $ |
| Total Income | $ | Total Expenses | | $ |

## ATTACHMENTS

### Item 27. Documents Attached to this Financial Statement
List all documents that are being submitted with this financial statement.  For any Item 24 documents that are not attached, explain why.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

# Attachment B

# FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions**:

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2. The font size within each field will adjust automatically as you type to accommodate longer responses.

3. In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4. When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

6. Type or print legibly.

7. An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

**Item 1.**        **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

E-Mail Address_____ Internet Home Page_____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.**        **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status: Active _____ Inactive _____ Dissolved _____

If Dissolved: Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.**        **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

Initials _____

<u>Item 4.</u>　　　**Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

<u>Name & Address</u>　　　　　　　　　　　　　　　<u>% Owned</u>

_____　_____

_____　_____

_____　_____

_____　_____

<u>Item 5.</u>　　　**Board Members**

List all members of the corporation's Board of Directors.

<u>Name & Address</u>　　　　　　　　　<u>% Owned</u>　<u>Term (From/Until)</u>

_____　_____　_____

_____　_____　_____

_____　_____　_____

_____　_____　_____

<u>Item 6.</u>　　　**Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

<u>Name & Address</u>　　　　　　　　　　　　　　　<u>% Owned</u>

_____　_____

_____　_____

_____　_____

_____　_____

_____　_____

Page 3　　　　　　　　　　　　　　　　　　　　Initials _____

**Item 7.**     **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

| Name & Address | Business Activities | % Owned |
|---|---|---|
| | | |
| | | |
| | | |

State which of these businesses, if any, has ever transacted business with the corporation _____

_____

**Item 8.**     **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name | Business Name & Address | Business Activities | % Owned |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

State which of these businesses, if any, have ever transacted business with the corporation _____

_____

**Item 9.**     **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date. A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

| Name and Address | Relationship | Business Activities |
|---|---|---|
| | | |
| | | |
| | | |

Initials _____

<u>**Item 10.**</u>     **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| <u>Name</u> | <u>Firm Name</u> | <u>Address</u> | <u>CPA/PA?</u> |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

<u>**Item 11.**</u>     **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| <u>Name, Address, & Telephone Number</u> | <u>Position(s) Held</u> |
|---|---|
| | |
| | |
| | |
| | |

<u>**Item 12.**</u>     **Attorneys**

List all attorneys retained by the corporation during the last three years.

| <u>Name</u> | <u>Firm Name</u> | <u>Address</u> |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

Initials _____

<u>Item 13.</u>        **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Initials _____

Case 1:19-cv-25046-RNS *SEALED* Document 4-3 Entered on FLSD Docket 12/09/2019 Page 8 of 16

**Item 14.**          **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Initials _____

<u>Item 15.</u>     **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

<u>Item 16.</u>     **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| <u>Owner's Name</u> | <u>Name & Address of Depository Institution</u> | <u>Box No.</u> |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

## FINANCIAL INFORMATION

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

<u>Item 17.</u>     **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| Federal/<br>State/Both | Tax Year | Tax Due<br>Federal | Tax Paid<br>Federal | Tax Due<br>State | Tax Paid<br>State | <u>Preparer's Name</u> |
|---|---|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |

Initials _____

**Item 18.**      **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|--------------|------------------------|---------------------|---------------------------|----------|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 19.**      **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

| | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|--|---------------------|------------|-------------|-------------|
| Gross Revenue | $ | $ | $ | $ |
| Expenses | $ | $ | $ | $ |
| Net Profit After Taxes | $ | $ | $ | $ |
| Payables | $ | | | |
| Receivables | $ | | | |

**Item 20.**      **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____ Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|-----------------------------------------|------------------------|-------------|-----------------|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

Initials _____

<u>**Item 21.**</u>     **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation.  Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

<u>**Item 22.**</u>     **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____


Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Initials _____

**Item 23.**      **Other Assets**

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**Item 24.**      **Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Page 11                                                                    Initials _____

Case 1:19-cv-25046-RNS Document 171 Entered on FLSD Docket 12/13/2019 Page 47 of 55
Case 1:19-cv-25046-RNS *SEALED* Doc #1-1 Entered 12/31/19 Page 97 of 105 PAGEID #: 103
Case 1:19-cv-25046-RNS *SEALED* Document 4-3 Entered on FLSD Docket 12/09/2019 Page 13 of 16

**Item 25.**      **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____


**Item 26.**      **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $ _____

Initials _____

<u>Item 27.</u>    **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

<u>Item 28.</u>    **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| <u>Name of Credit Card or Store</u> | <u>Names of Authorized Users and Positions Held</u> |
|---|---|
| | |
| | |
| | |
| | |
| | |

<u>Item 29.</u>    **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| <u>Name/Position</u> | <u>Current Fiscal Year-to-Date</u> | <u>1 Year Ago</u> | <u>2 Years Ago</u> | <u>Compensation or Type of Benefits</u> |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

Initials _____

<u>Item 30.</u>    **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| <u>Name/Position</u> | <u>Current Fiscal Year-to-Date</u> | <u>1 Year Ago</u> | <u>2 Years Ago</u> | <u>Compensation or Type of Benefits</u> |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

<u>Item 31.</u>    **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| <u>Transferee's Name, Address, & Relationship</u> | <u>Property Transferred</u> | <u>Aggregate Value</u> | <u>Transfer Date</u> | <u>Type of Transfer (e.g., Loan, Gift)</u> |
|---|---|---|---|---|
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |

Initials _____

<u>Item 32.</u>　　　**Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

<u>Item No. Document<br>Relates To</u>　　<u>Description of Document</u>

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

_____　　_____

　　　I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____　　　　_____
(Date)　　　　　　　　　　　　　　Signature

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Corporate Position

　　　　　　　　　　　　　　　　Initials _____

Case 1:19-cv-25046-RNS *SEALED* Document 1-71 Entered on FLSD Docket 12/13/2019 Page 101 of 55

# Attachment C

Case 1:19-cv-25046-RNS *SEALED* Document 4-4 Entered on FLSD Docket 12/09/2019 Page 2 of 3

| Form **4506** | | |
|---|---|---|
| (March 2019) | **Request for Copy of Tax Return** | OMB No. 1545-0429 |

**Form 4506**

(March 2019)

Department of the Treasury
Internal Revenue Service

**Request for Copy of Tax Return**

▶ Do not sign this form unless all applicable lines have been completed.
▶ Request may be rejected if the form is incomplete or illegible.
▶ For more information about Form 4506, visit *www.irs.gov/form4506*.

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See **Form 4506-T, Request for Transcript of Tax Return,** or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

**1a** Name shown on tax return. If a joint return, enter the name shown first.

**1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)

**2a** If a joint return, enter spouse's name shown on tax return.

**2b** Second social security number or individual taxpayer identification number if joint tax return

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution:** If the tax return is being mailed to a third party, ensure that you have filled in lines 6 and 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax return to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your return information, you can specify this limitation in your written agreement with the third party.

**6** Tax return requested. Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶ _____

**Note:** If the copies must be certified for court or administrative proceedings, check here . . . . . . . . . . . . . . . ☐

**7** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

**8** Fee. There is a $50 fee for each return requested. Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.

**a** Cost for each return . . . . . . . . . . . . . . . . . . . . | $ 50.00
**b** Number of returns requested on line 7 . . . . . . . . . . . . . |
**c** Total cost. Multiply line 8a by line 8b . . . . . . . . . . . . . . | $

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . ☐

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☐ **Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506. See instructions.**

Phone number of taxpayer on line 1a or 2a

**Sign Here**

▶ Signature (see instructions)                    Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                    Date

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**          Cat. No. 41721E          Form **4506** (Rev. 3-2019)

Form 4506 (Rev. 3-2019)

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506.* Information about any recent developments affecting Form 4506, Form 4506-T and Form 4506T-EZ will be posted on that page.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate (on line 5) a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Tip.** Use Form 4506-T, Request for Transcript of Tax Return, to request tax return transcripts, tax account information, W-2 information, 1099 information, verification of nonfiling, and records of account.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Get a Tax Transcript..." or call 1-800-908-9946.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040 series) and one for all other returns.

If you are requesting a return for more than one year or period and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual returns (Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 S-2 Kansas City, MO 64999 |

## Chart for all other returns

| If you lived in or your business was in: | Mail to: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |

## Specific Instructions

**Line 1b.** Enter your employer identification number (EIN) if you are requesting a copy of a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-B, Change of Address or Responsible Party — Business.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.



**You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed and returned to you if the box is unchecked.**

**Individuals.** Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506 but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5a. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

# Attachment D

# CONSENT TO RELEASE FINANCIAL RECORDS

I, _____ of _____, (City, State), do hereby direct any bank, saving and loan association, credit union, depository institution, finance company, commercial lending company, credit card processor, credit card processing entity, automated clearing house, network transaction processor, bank debit processing entity, automated clearing house, network transaction processor, bank debit processing entity, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, trustee, or person that holds, controls, or maintains custody of assets, wherever located, that are owned or controlled by me or at which there is an account of any kind upon which I am authorized to draw, and its officers, employees, and agents, to disclose all information and deliver copies of all documents of every nature in its possession or control which relate to the said accounts to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of *FTC v. On Point Global LLC, et al.*, now pending in the United States District Court for the Southern District of Florida, and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States of America which restrict or prohibit disclosure of bank or other financial information without the consent of the holder of the account, and shall be construed as consent with respect hereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated:_____  Signature:_____

Printed Name:_____